## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        CRIMINAL No. 03-01659  JB

HARRY LEE RAY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant Harry Ray's Motion *In Limine* to Admit Res Gestae and Character Evidence, filed January 22, 2004 (Doc. 25).  The primary issues are whether the Court should: (i) admit res gestae and character evidence concerning Maurice Peacock, the alleged victim; (ii) permit Ray to question Peacock and other witnesses about Peacock's violent assault upon his own aunt or mother hours before the incident that gives rise to the criminal charges against Ray; (iii) permit Ray to question Peacock and other witnesses about Peacock's reputation for violence; and (iv) permit Ray to question Peacock and other witnesses about Peacock's criminal history as it pertains to his reputation and character for violence.  Because the Court finds that evidence regarding Peacock's character for violence is relevant to Ray's defense of self-defense, but that specific instances of violence are inadmissible and do not qualify as res gestae evidence, it will grant the motion in part and deny the motion in part.

## BACKGROUND

The United States contends that, in the early morning hours of July 29, 2003, in Indian Country, on the Laguna Pueblo Indian Reservation, Ray, a then 40 year-old Native American, stabbed

a then 25-year old Native American, Maurice Peacock, with a knife.  The Laguna Police Department responded, and air transport medically evacuated Peacock to the University of New Mexico Hospital.  As a result of the stabbing, Peacock suffered a significant laceration to his left arm that cut through the muscle to the bone.  Although surgeons were able to save the arm, a partial amputation of the left elbow was necessary.

Sometime on the evening of July 28, 2003, Peacock and two friends drove to Ray's house.  Ray had been drinking beer and whiskey before the arrival of Peacock and his two friends.  Although Ray did not know the victim, Ray shared his beer with Peacock and his two friends.  While neither Peacock nor Ray dispute the beer drinking and initial socializing, Peacock and Ray dispute the events that led to the eventual stabbing.

Peacock indicated that, while at Ray's residence, Ray began "mouthing off" that Peacock was "down talking" his village.  Both Peacock and Ray are enrolled members of the Laguna Pueblo Tribe.  Peacock describes Ray as becoming increasingly belligerent, pushing him to the ground, pushing him again, and then charging him with a knife and successfully delivering the wound to Peacock's left arm.  Peacock also indicated that Ray may have become agitated with him, because Peacock said he was "a popular guy with the women of Laguna."

Ray offered a different version of the facts.  Later the same day, on July 29, 2003, Bureau of Indian Affairs Special Agent Augustine Abeita took a statement – which was taped and transcribed – from Ray.  In the course of the statement, Ray indicated that he had stabbed the previously unknown Peacock in self-defense.  He indicated that it was necessary for him to defend himself because Peacock had come at him with a knife.  Ray stated that Peacock was angered, because Ray, at some point in time, told Peacock and the two friends with whom Peacock had arrived that they had

to leave his house.

Although Ray told Abeita that he had stabbed Peacock in self-defense, he could not say from where Peacock got the knife.  Additionally, Ray indicated in the course of his statement that, because of prior stabbing incidents that were neither related to this event nor this victim, he was able, as in this case, to anticipate violent episodes and take preemptive action so as to get the upper hand in them.  Ray stated to Abeita that he developed a concern that night that something violent would occur so, before the stabbing, he went into the house and armed himself with a knife, which he put into one of the pockets of his shorts.

Ray recounted that, just before his stabbing of Peacock, he was "hyper," because of his consciousness of the previous non-Peacock related stabbing incidents which, according to his memory of them as he described them to Abeita, he had dominated.  Ray also remembered, in the course of the statement, being in a number of recent fights wherein, because of his size – about 300 pounds – he was able to let the other combatants take the first swing and then he would "just knock them on their ass."  Finally, in his statement to Abeita, Ray described Peacock, just before he stabbed Peacock, as "trying to intimidate" him.

Ray noted for Abeita a small scratch on the index finger of his left hand, which he maintained was consistent with his assertion of self-defense.  Abeita then developed with Ray that the knife which he had retrieved for himself and placed in a shorts pocket before the stabbing of Peacock was a folding style knife.  Thereupon, Abeita asked Ray whether he had sustained this wound while folding or unfolding his own folding knife.  Ray denied that he had cut himself with his own folding knife.

On or about July 31, 2003, F.B.I. Special Agent Jennifer M. Sparks filed a criminal complaint in the United States District Court for the District of New Mexico.  In her Complaint, Sparks alleged

that Ray assaulted Maurice Peacock, inflicting serious bodily injury.  The Complaint alleges that,

when Ray assaulted Peacock, he violated 18 U.S.C. §§ 113(a)(6) and 1153.  On August 26, 2003,

a grand jury indicted Ray on a one-count indictment of Assault Resulting in Serious Bodily Injury.

The Court has set a trial of this matter for March 8, 2004 at 9:00 a.m.

Ray has indicated that he intends to present the defense of self-defense.  To amplify that

defense, he seeks admission of res gestae evidence, character evidence, and habit evidence so as to

demonstrate that Peacock was the initial aggressor and that Ray reasonably responded to that

purported aggression with his knife attack.  Ray has taken the position that Peacock has a violent

character, that he acted in conformity therewith on July 29, 2003, and that he has the habit of acting

violently.

On May 30, 2003, a Pueblo of Laguna police officer arrested the victim, Peacock, for

Aggravated Assault, Criminal Mischief, and Public Intoxication.  On July 28, 2003, Peacock entered

pleas of guilty to the intoxication and mischief charges, the assault charge was dismissed, and

Peacock was released from the Laguna Tribal jail.  That same day, Peacock assaulted his own mother

(or possibly his aunt) and her boyfriend.  Peacock then went, uninvited, to Ray's home and attempted

to assault him with a knife.

Ray moves the Court *in limine* for the admission of the facts and circumstances pertinent to

Peacock's arrest on May 30, 2003, as well as Peacock's conduct on July 28, 2003, as evidence of the

victim's violent character and habit for violence  to demonstrate the victim's initial aggression and,

perhaps, as an implicit comparative benefit, the comparative non-violent nature of Ray.

## LEGAL ANALYSIS

Ray contends that Peacock's character and reputation for violence are essential to the strength

-4-

of Ray's defense.  Peacock's assault of his mother (or aunt) and her boyfriend occurred hours before

his fight with Ray.  Ray contends that Peacock's attitude and violent nature earlier in the evening are

res gestae, close-in-time, to the offense charged against Ray and are therefore essential to his defense

that Peacock was the initial aggressor in the incident.  Ray also asserts that evidence of Peacock's

earlier conduct is admissible as character evidence.  The Court does not believe that the evidence

qualifies as res gestae evidence or that specific instances of conduct are admissible to prove Peacock's

character.  The Court will, however, allow opinion and reputation evidence concerning Peacock's

character for violence.

**I.     EVIDENCE OF PEACOCK'S VIOLENT CONDUCT ON THE DAY OF THE
        ALTERCATION BETWEEN RAY AND PEACOCK IS NOT ADMISSIBLE AS RES
        GESTAE OF THE CHARGED OFFENSE.**

The allegations are that, on the day of the altercation between Ray and Peacock, Peacock was

released from jail.  Peacock had been in jail because of an earlier arrest for assault.  Free but not

rehabilitated, Peacock went to his mother's (or aunt's) home for a celebration.  There, he assaulted

both her and her boyfriend.  Later in the evening, Peacock assaulted Ray, resulting in Ray injuring

Peacock as Ray attempted to defend himself.

Ray contends that these facts demonstrate Peacock's pattern and habit of engaging in violent

conduct, including on the day Ray allegedly committed his crime.  The day's events and those leading

up to it paint a portrait of a violent and dangerous man.  Peacock's prior arrest and incarceration for

assault, the assault on his mother (or aunt), and his attack on Ray demonstrate the threat that he

posed to Ray and support Ray's actions in defending himself.

Ray's freedom hinges on the success of his assertion of self-defense.  The strength of that

defense, in turn, depends heavily on Peacock's tendencies toward and reputation for violence. Ray

contends that introducing evidence of these matters and, particularly, questioning Peacock about them, is essential to Ray's defense that Peacock was the initial aggressor and that Ray acted in self defense at his own home.

Ray asserts that the Court should admit evidence of Peacock's alleged violent nature as part of the res gestae of Ray's indictment.  Peacock's assault upon his mother/aunt and her boyfriend occurred in close temporal proximity to his alleged taunting and assaultive behavior toward Ray.  Ray contends that Peacock's conduct of that day – including his intent and behavior earlier in the day – is relevant and pertinent to Ray's defense that Peacock was the initial aggressor.

Courts have admitted res gestae evidence to explain and to provide background for the circumstances of the incident being litigated.  See United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)("Evidence of other crimes should not be suppressed when those facts come in as res gestae[.]"); United States v. Cook, 745 F.2d 1311, 1317 (10th Cir. 1984)(noting that courts have allowed the admission of evidence of other acts "when such evidence provides part of the 'context' of the crime charged or is necessary to fully present the case; when the evidence is so much a part of the 'environment' of the case that it is necessary to 'complete the story of the crime'; and when the evidence of other acts is so linked together in 'point of time and circumstances' with the crime charged that it is part of the 'res gestae' of the crime charged.").

The United States Court of Appeals for the Tenth Circuit in United States v. Kimball described res gestae evidence as evidence that is "'part and parcel of the proof of the offense [ ] charged in the indictment.'" United States v. Kimball, 73 F.3d at 272 (quoting United States v. Gano, 560 F.2d 990, 993 (10th Cir. 1977)).  See also United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)(stating evidence is admissible when it provides the context for the crime, "is necessary to a 'full

presentation' of the case," or is "appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the 'res gestae''").

In <u>United States v. Kimball,</u> the United States was prosecuting a bank robbery, and the government presented evidence that the defendant in that case had recently been released from prison – evidence connecting the defendant to a motel room, a demand note, identifiable means of financial support, his clothing – to establish criteria under rule 404(b), such as motive, identity, and opportunity that would provide a relevant and probative link between the defendant's recent release from prison and the bank robbery. The Court believes that <u>United States v. Kimball</u> is distinguishable from the indictment in this case. As an initial point, Ray's argument assumes, to some degree, a matter that must be proved: Ray's argument presupposes that the victim, Peacock, possesses a violent character or has a habit for violence. The United States contends that point is not as clear as Ray argues. Ray's assertion also rests on the proposition that an arrest for an offense allegedly committed two months before the offense date in this indictment, and which was ultimately dismissed, qualifies for admission as giving solid and material proof of the context of the offense charged in this case. In <u>United States v. Kimball</u>, the court admitted res gestae evidence – much of it objectively documented – to demonstrate criteria such as identity, motive, and opportunity; in this case, objectively established connections between the evidence that Ray seeks to admit and the criteria under rule 404(b) are attenuated if, they exist at all.

## II. CHARACTER EVIDENCE OF THE VICTIM IS ADMISSIBLE THROUGH REPUTATION AND OPINION EVIDENCE.

Unable to establish that evidence of specific acts should come in under his res gestae theory, Ray cites rules 404(a)(2), 404(b), and 405(b) as authority both for admitting evidence of the victim's

alleged character for violence and for admitting this type of evidence in specific instance format. Character evidence is admissible under a variety of circumstances. The Court will admit evidence of a pertinent trait of Peacock's character, but Ray must prove that character trait under rule 405(a), by reputation or opinion evidence. The Court will not allow Ray to prove Peacock's character for violence through evidence of specific acts.

### A.     Rule 404(a)(2)

Ray contends that, even if the Court does not admit the above evidence and testimony under a "res gestae" theory, the evidence is still admissible. See Fed. R. Evid. 404(a)(2)(allowing "e[]vidence of a pertinent trait of character of the alleged victim of the crime offered by an accused . . . ."). In cases where the accused asserts self-defense, evidence of the victim's violent character or of specific past acts of violent behavior can be highly probative of the accused's assertions. Among other things, such evidence can show the victim's propensity for violence or aggression – a fact probative of the victim's use of unlawful force at the time of the altercation – or even demonstrate the victim's state of mind.

Thus, the facts and Ray's defense in this case make evidence of Peacock's violent character particularly relevant. As such, and pursuant to rule 404(a)(2), questions and evidence of Peacock's violent character and reputation for violence are admissible. See Perrin v. Anderson, 784 F.2d 1040, 1045-46 (10th Cir. 1986)(stating that testimony concerning violent reputation of victim is relevant to infer that the victim was acting violently on the occasion at issue); United States v. Piche, 981 F.2d 706, 713 (4th Cir. 1992)(stating that opinion or reputation evidence concerning victim is allowable). The methods of proof available to Ray present a different question.

### B.    Rule 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of  a person in order to show action in conformity therewith.  The rule goes on to list a number of exceptions for which such evidence will be admissible.  Those exceptions include motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Civ. P. 404(b).  The Supreme Court of the United States enunciated a four-part test to determine whether this type of evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The Tenth Circuit has consistently applied that test.

> To determine whether Rule 404(b) evidence was properly admitted we look to the four-part test set out by the Supreme Court in Huddleston v. United States . . . .  This test requires that: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000).

When prior bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the [bad act]."  United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999).  The Tenth Circuit has also stated that district courts are required to "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."  United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985)).  "[A] broad statement merely invoking or restating Rule 404(b) will not suffice."  Id.

Ray argues that specific instances of Peacock's conduct are relevant to show Peacock's intent. He contends that Peacock's conduct earlier in the day of his altercation with Ray shows Peacock's violent state of mind. The Court does not believe that such evidence fits into a chain of logical inferences regarding Peacock's intent. The evidence suggests that Peacock may have been the aggressor because he acted in conformity with his violent character. This inference is impermissible under rule 404(b). Accordingly, the Court will not admit evidence of Peacock's specific acts under rule 404(b).

### C.    Rule 405(b)

A party may present testimony concerning specific instances of conduct only when "character is in issue in the 'strict sense.'" Perrin v. Anderson, 784 F.2d at 1045 (quoting Fed. R. Evid. 405, advisory committee note). "Character is directly in issue in the strict sense when it is 'a material fact that under the substantive law determines rights and liabilities of the parties.'" Id. (quoting E. Cleary, McCormick on Evidence § 187, at 551 (3d ed. 1984)). This will be the case in situations where character itself is an element of a claim or defense. An example is the issue of the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver. See Fed. R. Evid. 404, advisory committee note. The Perrin v. Anderson court thus concluded that it had been error for the district court to rely upon the character evidence rules in permitting testimony about specific violent incidents involving the decedent. See 784 F.2d at 1045.

In this case, Ray seeks to use character testimony as circumstantial evidence to establish that Peacock was the initial aggressor. While Ray is correct that courts have consistently allowed such evidence, it is important to note that proof has been limited to testimony in the form of either reputation or opinion. See United States v. Talamante, 981 F.2d 1153, 1156 (10th Cir. 1992); United

States v. Piche, 981 F.2d 706, 713 (4th Cir. 1992).  Proof in the form of testimony regarding specific

instances is unavailable in this case because Peacock's character is not at issue in the "strict sense."

Thus, the proposed evidence is not within the scope of rule 405(b).

**D.     Rule 609(b)**

A party may use evidence of a crime to attack a witness' credibility "if the crime was

punishable by death or imprisonment in excess of one year under the law under which the witness was

convicted" or "if it involved dishonesty or false statement," Fed. R. Evid. 609(a)(1) & (2), so long

as the conviction or the witness' release from confinement for the conviction occurred within the last

ten years, see Fed. R. Evid. 609(b).  Ray has not drawn the Court's attention to any conviction that

he would introduce to attack Peacock's credibility.  This rule is thus inapplicable to this case.

**IT IS ORDERED** that the Defendant Harry Ray's Motion *In Limine* to Admit Res Gestae

and Character Evidence is granted in part and denied in part.  The Court will permit the admission

of evidence of Peacock's violent character through opinion and reputation testimony.  The Court will

not allow the Defendant to introduce evidence regarding specific acts of violence by Peacock.  The

Court also instructs the Defendant, and his counsel, not to mention, refer to, interrogate about, or

attempt to convey to the jury in any manner, either directly or indirectly, any excluded evidence.


_____

UNITED STATES DISTRICT JUDGE

Counsel:

David C. Iglesias
    United States Attorney for
    the District of New Mexico
Paul H. Spiers
    Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the United States*


Jason Bowles
Sharp, Jarmie & Bowles, P.A.
Albuquerque, New Mexico

     *Attorney for the Defendant*